GLOBE KNITTING WORKS v. SEGAL et al.

(District Court, E. D. Pennsylvania. January 31, 1917.)

No. 1295.

1. PATENTS &⇒262, 319(1)—INFRINGEMENT—REMEDIES.
   The remedy of a patentee in case of infringement is an action at law to recover damages together with the right to an injunction to restrain further infringement. in which case, because of necessity, a court of equity may, to do full and complete justice, award damages.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 403; Dec. Dig. &⇒262, 319(1).]

2. PATENTS &⇒319(1)—INFRINGEMENT—JURISDICTION—RELIEF.
   In a suit for the infringement of a patent, the right of a court of equity to award damages is dependent on the granting of purely equitable relief.
   [Ed. Note.—For other cases, see Patents, Dec. Dig. &⇒319(1).]

3. PATENTS &⇒222—INFRINGEMENT—DAMAGES.
   Under Rev. St. § 4900 (Comp. St. 1913, § 9446), a patentee who did not mark his device with the word patented is not entitled to recover damages for an infringement except on proof that defendant after notice of the infringement continued it.
   [Ed. Note.—For other cases, see Patents, Cent. Dig. § 352; Dec. Dig. &⇒222.]

4. APPEAL AND ERROR &⇒662(1)—RECORD—CONCLUSIVENESS—MOOT CASE.
   While the courts will not determine a mere moot question or pass on abstract claims, a suit for the infringement of a patent will not be dismissed on the ground that only a moot question is involved, because of the undenied statement by defendant's counsel that the infringement was merely trivial and was desisted from as soon as the attention of defendant was called to it; the record showing a denial by defendant of every claim of right made by plaintiff and a stipulation that defendant after notice of plaintiff's claim and knowledge of the assertion of infringement had disposed of articles which plaintiff claimed infringed.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2850; Dec. Dig. &⇒662(1).]

5. PATENTS &⇒328—CONSTRUCTION—INFRINGEMENT.
   The Clarke patent, No. 1,035,819, for an improved union suit undergarment, construed, and held in view of the prior art and patents not to disclose patentable invention with respect to the claim of a closed crotch of a double thickness of elastic material and so not infringed by defendants.

&⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Bill by the Globe Knitting Works against Keeva Segal and Benjamin Segal. Sur trial hearing on bill, answer, and proofs. Bill dismissed.

Cornelius D. Ehret, of Philadelphia, Pa., and Luther V. Moulton, of Grand Rapids, Mich., for plaintiff.

J. Bonsall Taylor and E. Hayward Fairbanks, both of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. [1-3] The remedies allowed to the owner of a patented device for a trespass upon his property rights involve the right of recovery for the damages sustained where a legal injury exists. The remedy to enforce this right is primarily afforded through an action at law. There is also included the right to a writ of injunction restraining the defendant from further infringement. This remedy is necessarily an equitable one. Because of this necessity, where an injunction is sought, to resort to a court of equity, that court, in order to do complete and full justice, may determine and award damages. This latter power is, however, only incidental to the former, and hence we have the principle that when jurisdiction does not attach, in order to determine whether an injunction should issue and no other grounds of chancery jurisdiction appear, a court of equity has no jurisdiction to take cognizance of the case merely to award damages. Under the federal statutes no damages are recoverable without proof that the defendant continued the infringement after the notice provided for in R. S. 4900 (Comp. St. 1913, § 9446).

[4] The principle universally applied by all courts is that they will not determine mere moot questions or pass upon mere abstract claims to rights of property or otherwise. These observations are prompted by the statement of counsel for defendant that the trespass upon the claimed rights of plaintiff here complained of were trivial and were desisted from as soon as the attention of defendant was called to the alleged infringement, and that the plaintiff was so notified and an abandonment of the proceedings suggested upon payment of costs by defendant. There was no contradiction of this statement, and no denial by the plaintiff of the facts asserted. Did the case disclose these facts, we would have presented a plaintiff asking for damages which he could not recover, and asking for an injunction against a continuing infringement which was neither being continued or reasonably to be expected might be continued. Such a proceeding could result in no other substantial finding than that the validity of the letters patent of the plaintiff was not denied by this defendant. The record of the case, however, not only discloses no such facts but, on the contrary, a denial, at least seemingly earnest, of every claim of right made by the plaintiff, and a stipulation that the defendant had made and sold, after notice of plaintiff's patent and knowledge of the claim of infringement, garments which the plaintiff alleges to be substantially identical with those made under the protection of its patent.

The silence of the plaintiff, in face of the statement of counsel, in this view of the record, would not carry the implication of an admis-

sion.of the facts as stated, but may be construed as an assertion of his right to ignore statements flatly opposed by the record proofs. We are, of course, confined to the facts as disclosed by such proofs.

[5] The letters patent involved bear the number 1,035,819, and were issued to Algernon E. Clarke, for an improved union suit undergarment. That the patentee was not a pioneer is disclosed by his application. The objectives of his claimed invention were a "closed·crotch," assuring good wearing qualities in the "crotch" without making it too heavy, and giving the. garment sufficient play so that in stooping or otherwise the "crotch" would not be drawn up against the person of the user so as to make the garment uncomfortable. To accomplish these ends, he cuts out a triangular shaped piece of material from the crotch, and inserts in place of the fabric removed a "double thickness" of very elastic fabric. The result claimed is that a certain amount of give is imparted to the crotch part of the garment. This result is accomplished without being accompanied by any of the disadvantages present when other makes of garments are worn. One thing, of which the user of the garment is rid, is that, as the inserted fabric is rendered elastic by means of the character of the weaving, there is no rotting as when rubber is used, and no wearing of the parts as when the fabric used is more closely knitted. Another is all uncomfortable pressure at the "crotch" is removed. · This is forestalled by the elasticity of the crotch insertion and by inserting, at the neck, narrow strips of "very elastic" material which stretches in one direction only. This latter contrivance is stated not to be essential to the success but to be an aid to the successful working of the crotch contrivance. It is not, however, included in the combination, claim to which is made.

There is in the application a clear admission that (1) union garments, (2) such garments with openings, and (3) with flaps to cover the opening, were all in common use; and there is a disclaimer of any claim to the invention of the flap, this having been a feature of garments of the kind referred to both when used with open or closed crotches. It is not altogether clear whether the patentee meant to state that (4) the use of rubber or a surplus quantity of material at the crotch to assure the required give was common, or whether he merely means to state that his crotch construction is better than either of the suggested crotches. Nor is it entirely clear what the patentee had in mind to express by the phrase adopted in describing the idea of removing a portion of the fabric at the crotch and filling in this space "with a double thickness of very elastic fabric." It might convey the idea that the inserted fabric should be made of "double thickness" by being made to consist of two pieces laid one upon the other or be "doubled" in the sense of being twice as large as required and folded over so as to reduce it, when thus folded, to one-half size, or it might be understood to mean that the inserted fabric was twice as thick as the material cut out. Neither of these ideas is carried into the garment as made either by the plaintiff or the defendant, if all are to be judged by the exhibit samples.

The material of the defendant's make of garment is thinner than

that of the plaintiff, and the inserted piece is noticeably thicker than the material of the garment, and very much more elastic.

In the plaintiff's make of garment, the inserted piece is perhaps thicker than the material of the body of the garment, and is somewhat more elastic; but the difference in either respect is not great.

There is a like departure in the garments as made from the preferred triangle form which the inserted fabric is described to have. This preferential "triangle shape" is not carried into the claim nor reflected in the garments as made. In the latter the crotch piece is more diamond shaped. This may, however, be due to the handling of the exhibits and to the forcible stretching of the crotch to test its elastic qualities.

The keystone of the arch of the combination claimed is clearly a crotch inserted in the construction of the garment, the inserted material consisting of an elastic knit fabric performing the function of supplying the required give.

A test of whether invention is involved is supplied by presenting to our minds a garment, such as described in the claim, but having instead of the inserted crotch one made of the material of the garment, and having a surplus of material so as to supply give, and having also in mind the defects of such make of garments in that this surplus of material was uncomfortable to the wearer and was not durable. The suggestion of cutting out the crotch and inserting elastic material in place of the part removed might well be an improvement by getting rid of the defects, and involve invention. The invention might not be thought to be of a very high order but nevertheless be held to be present.

Another test is afforded by adding to the garment to be improved the feature of having the crotch cut out and an elastic crotch inserted made of a fabric containing rubber so as to give it elasticity, the rubber of which would, however, deteriorate under use and the garment be thereby rendered less durable, and the suggested improvement being to make the inserted crotch of "an elastic knit fabric extending well up in front of the garment and extending down the leg seams," and this made definite by reference to the inserted fabric being in the preferential shape of a triangle. It would seem that the only novelty in the suggestion would be in the substitution of one material for another and in the shape of the inserted piece. There would be no new or added function given to the inserted crotch.

The invention involved in such a change could in turn be tested by assuming such unimproved garment to have been patented and the improver to be defending against a charge of infringement through and by the substitution of one material for another and a slight change in the shape of the inserted material.

The indicated judgments in these supposititious cases brings the decision of this case to turn upon the fact of whether the idea of an inserted crotch to afford the necessary elasticity to that part of the garment was novel or known to the art at the time of this claimed invention. No better evidence against a patentee that a given idea was old could be had than through the admissions of the application for

the patent. This applicant was compelled to pass the ordeal of the Patent Office. He was confronted by the then known state of the art. He did not claim to be a discoverer but an improver. He must therefore describe the thing to which his claimed invention was an improvement. The description which he gives certainly incorporates all the elements of the garment described in his claim, except the thought of cutting out the crotch and inserting the knit material in the open space thus made. This thought is clearly expressed in his application and implied in his claim as made. Was this idea also old? He admits the use of the open crotch. He admits the use of the closed crotch. He at least suggests the use of a crotch like his own made of a fabric to which elasticity is imparted by the presence of rubber instead of by being knitted as he preferred. Rubber material of this kind had long been known to the art and was to be had. Did he mean to admit that it had been used as he proposed to use the knitted material, or did he merely mean that the thought of using the rubber fabric (although never in fact used) had occurred to him but had been discarded in favor of knitted material? Whether the patentee admitted such prior use or not, was it so used? There is an obvious gain (not reflected in either the application or the claim) by making use in the inserted material of the fact that in many fabrics, as especially in those of the ribbed woven type, there is much more stretch in the lateral than in the longitudinal direction. The meaning which the applicant intended to attach to his reference to the use or possible use of rubber fabrics may be gathered from the prior patents with which he is assumed to be familiar and doubtless was. The allusion to rubber is thereby explained.

The defendant in the Segal patent, No. 1,114,540, which postdates that of Clarke, makes an illy disguised attempt to write into the Clarke patent the inventions which preceded both. The fact, if it be a fact, gains nothing by this ex post facto effort. Let us see what the fact is. Taking them up in inverse order, Terwilliger, No. 992,291, is for a union garment with a diamond or triangular shaped gusset in the front and rear parts of the crotch. It differs from the Clarke idea essentially only in the respect that the required give is afforded by the fullness of the material inserted and not by its elasticity or stretching quality.

Johnson, No. 973,200, incorporates the identical thought of an inserted piece with that of the Clarke patent; but here again the stretch is given by the fullness of the inserted piece and not by the character of the material.

Stecker, No. 924,013, proposed with respect to overalls the very same objectives which Clarke aimed to reach in undergarments "to afford give under bending or stooping strains," and he accomplishes his object by substantially the same means. There is a like use of a gusset, inset, or insert of a diamond or triangular, or bow shaped piece of material essentially identical with the Clarke plan in every respect except the make of the fabric inserted.

It is unnecessary to pursue the inquiry further. This makes clear that Clarke meant to admit that the art had furnished him with the idea of everything which (in the aspect of the case we are now con-

sidering) he incorporated in his patent claim, except the added thought which he supplied of using a gusset of "elastic knitted fabric." To award a patent for the mere substitution of one material for another and give the patentee the exclusive use of that material when used in his combination would have far reaching consequences which the policy of the law would not favor.

The conclusion reached is that this bill should be dismissed, with costs. In reaching this conclusion, we are not unmindful that the validity of this patent is asserted as one to be upheld for a combination involving invention, into which the elastic gusset enters merely as an element. Into this we do not care to go, because no finding of infringement can be made against this defendant except that based upon his encroachment upon plaintiff's combination in respect only to this one element. Our conclusion therefore involves no finding of the invalidity of this patent. The finding merely is that there is no infringement by this defendant, unless a construction is given to the claim so broad that an undergarment, made up of any combination of elements into which this idea of a knitted elastic gusset enters as an element, would be an infringement, and that we decline to construe the patent thus broadly.

The bill of complaint is dismissed, with costs to the defendant, and a decree embodying these findings may be submitted.