GLOBE KNITTING WORKS v. SEGAL et al.

(Circuit Court of Appeals, Third Circuit. December 27, 1917.)

No. 2291.

1. PATENTS ⚍328— VALIDITY AND INFRINGEMENT—UNION SUIT.

The Clarke patent, No. 1,035,819, for an improvement in knit underwear of the type known as union suits, while not covering a broad invention by the use of a new material in a new way, produced new results in such garments of a useful character, measured by the increased comfort they afford the wearer and the popular demand they created, and discloses patentable invention; also *held* infringed.

2. PATENTS ⚍27(2)—INVENTION—NEW USE OF OLD DEVICE.

The transfer of elastic features previously used in drawers or overalls to union suits, when they are subjected to different strains and do not perform precisely the same functions, and therefore do not produce the same result, may constitute patentable invention.

3. PATENTS ⚍36—EVIDENCE OF INVENTION—POPULAR RECOGNITION.

Where the question of invention is close, as it usually is when the thing done is simple, the thing achieved, its recognition by the art, and the demand for it by those who use it, are matters properly to be put in the scale and weigh in favor of invention.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by the Globe Knitting Works against Keeva Segal and Benjamin Segal, doing business as the Quaker Manufacturing Company. Decree for defendants, and complainant appeals. Reversed.

For opinion below, see 239 Fed. 322.

Prichard, Saul, Bayard & Evans, of Philadelphia, Pa., for appellant.

E. Hayward Fairbanks, of Philadelphia, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The bill charges infringement of Letters Patent No. 1,035,819, issued August 13, 1912, to A. E. Clarke, assignor of the plaintiff, for improvements in knit underwear. The defences are invalidity and non-infringement. The District Court, while indicating its opinion that the garment of the patent lacked patentable novelty, dismissed the bill on the ground that infringement of the claim, if valid, could not be found under the narrow construction which it gave it. 239 Fed. 322. The plaintiff took this appeal.

[1] The patent is for improvements in underwear of the type generally known as "union suits." These garments comprise a shirt and drawers made in one continuous piece. When the two elemental garments are thus combined in one, the demands of the human body upon the unified garment are radically different in number and character from demands made upon its two elements when worn separately. To meet these requirements and to attain their objectives of convenience and comfort, the art has produced union suits of many

patterns. The fundamental types, as known to the trade, are "open crotch" and "closed crotch." The manifest discomfort of the former has greatly increased the use of the latter. To the latter class, the garment of the patent in suit belongs.

The human body, in different positions of sitting, stooping, reaching, subject a garment of one close-fitting piece, extending over its entire surface from neck to feet, to many strains. These strains begin at the shoulders, and extending downwardly, are arrested at the crotch, where, if not relieved by some compensatory means, they produce a discomfort that makes the wearing of union suits undesirable or wholly impracticable. Here is a problem. It was first met by the open crotch pattern, and in a measure solved. But this solution of the problem produced a new discomfort, which caused the trade, in response to popular demand, to confine itself chiefly to the closed crotch pattern with its original problem of shoulder strain and crotch binding, and to seek its solution.

Johnson (No. 973,200) conceived that the strain upon the crotch of a union suit and its consequent tightness and discomfort, could be relieved by supplying more material at that place. Terwillinger (No. 992,291) conceived the same idea. Both obtained patents for the particular means which they conceived for putting that idea into practice. But this solution brought still another discomfort to the wearer of union suits. Instead of being of a pattern that would fit the body snugly, when in motion or in repose, union suits of these patterns were made larger from shoulders to crotch, in order to supply a fullness of material to take up the strains. The result was that the extra strain-relieving material, when not performing its function, became an useless and baggy excess of material and became also an active and ever present cause of discomfort.

This was the state of the art when Clarke entered it. Manifestly he was not a pioneer. He did not claim to have invented a union suit. He claimed, simply, to have made improvements upon garments of that kind. He found in the art union suits with crotches and flaps and inserts, and set about to solve a problem admittedly there.

The means he conceived is set forth in the patent in suit and is nothing more than a combination of old elements of an union suit and flaps, and "an elastic knit fabric extending well up in front of the garment and extending down the leg seams, forming a lateral elastic closed crotch that is firmly sewed to the front of the garment and the leg seams and to the lower edges of the flaps, substantially as shown and described." The insert or gusset as shown and described is a somewhat diamond shaped piece of fabric, which in practice gets its elasticity from the weave of the fabric into ribs or wales, set in the garment with the ribs or wales placed transversely, the direction of the strains coming from the shoulders and body. Simple as this arrangement appears, it accomplished several things. It did away with the baggy fullness of union suits of the prior art and permitted the making of a garment that conformed snugly to the outline of the body. Its elasticity acted as a compensating means for the strains as they came from the shoulders and prevented tightness at the crotch in

various positions of the body, and relieved the wearer from discomfort. These things it did, as we are informed by the testimony.

To be sure, the range of invention in a garment of this character is obviously not broad, and Clarke's invention is not a great one. Yet, if the inserted fabric, cut in a particular shape and possessing a particular yielding quality, takes up strains in the garment, and transforms discomfort into comfort for the one wearing it, and achieves this in a manner not before employed, it is not impossible that the idea contains patentable novelty—unless something in the prior art, or in a kindred art, so closely resembles it as to make the improvement a mere improvement rather than an invention. And such the defendants insist is the claimed invention of the patent.

[2] There is nothing in the prior art, if restricted to garments of the union suit variety, which anticipates or otherwise negatives the invention of the patent. But in the prior art of drawers, overall-pants and like nether garments, there are a number of patents containing elastic crotch pieces or gussets in varied forms and arrangements, of which Scriven (No. 625,423) for drawers and Stecker (No. 924,013) for overall-pants may be taken as representative. At first view it would seem that it did not require an exercise of the inventive faculty for Clarke to put Scriven's drawers gusset and Stecker's overall-pants insert, with some variation, into an union suit and cause them to do there the same thing and produce the same result. But the fact is that drawers and overall gussets, when transferred to union suits, do not perform precisely the same function and therefore do not produce the same results. Body movement strains upon drawers and pants, which cover but half of the body, are entirely different from strains in union suits moving from the whole body. It is also a fact that Clarke, whether or not he got his idea from the art of drawers making, was the first to apply it to union suits, with a result that is as surprising as the idea seems simple. The plaintiff paid Clarke $50,000 for his invention, $35,000 in cash and $15,000 in stock of the plaintiff corporation with a market value of par. And the plaintiff apparently knew its business, for in two years after acquiring the patent, it manufactured between $600,000 and $700,000 of garments under the patent and received and continues to receive royalties from seven corporations manufacturing under licenses.

[3] The District Court, in considering without deciding the validity of the patent, evidently inclined to the opinion that Clarke's use of an elastic knit crotch piece was little more than a substitution of material, and approached, if it did not fall within, the principle of law that the substitution of one material for another, which does not involve change of method nor develop novelty of use, even though it may result in a superior article, is not necessarily a patentable invention. Florsheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20, 34 L. Ed. 574. True, undergarments of earlier patterns had inserts at the crotch, but no union garment, so far as the record shows, had ever been made with an elastic insert at the crotch. Therefore, in a sense, Clarke did substitute one material for another, but we think he did something more. Frost Co. v. Cohn (C. C.) 112 Fed. 1009. By the substitution,

or more properly speaking, by the use of a new material in a new way, he produced new results of a useful quality measured by the increased comfort they afforded and the popular demand they created. Simple as it may seem, the elastic knit crotch piece produced results desired by those who wear the garment and the payment of large tribute by those who manufacture it. When the question of invention is close, as it usually is when the thing done is simple, the thing achieved, its recognition by the art, and the demand for it by those who use it, are matters properly to be put in the scale and weigh in favor of invention. Neill v. Kinney, 239 Fed. 309–314, 152 C. C. A. 297. We find the patent valid.

Upon the issue of infringement, the District Judge found that the defendant did not infringe, unless the claim of the patent be construed so broadly, that an undergarment made up of any combination of elements into which the idea of a knitted elastic gusset enters as an element, would be an infringment. He declined to construe the patent thus broadly. We do not think that, to find infringement, the claim must be thus broadly construed. Clarke's patent is not for an elastic knit gusset alone. It is for a combination containing such a gusset as an element, and the rule of the patent law, that the omission of one element of a claim for a combination avoids the charge of infringement, applies to this patent as to any other. The question of infringement in this case, therefore, is not whether the claim of the patent may be infringed by the use of an elastic knit gusset in *any* combination of elements, but whether the defendants infringe by making the garment here charged as infringing, because it embraces *all* the elements of the claim of the patent. They are (1) the body of the union suit, (2) the presence, location and adjustment of flaps, and (3) the elastic knit gusset. The mere inspection of the two garments determines the question of infringement. In looking at them and comparing them in the light of the testimony, we cannot escape the conclusion that the garment of the defendants corresponds precisely in elements and substantially in detail with the claims of the patent. The parts are the same, they are in the same positions and relation, are intended for the same uses, perform the same functions and operate exactly as disclosed by the patent,—with one exception. This is found on the under or inside flap of the defendant's garment, which is a continuous piece extending from the under arm seam across to its inner edge. In the patent, this flap is described as "stitched to the opposite side of the garment and extending under the first named flap." The second or inside flap of the patent, in the position disclosed, is the element of the patent, not the mere stitching of the flap. The defendants' second or inside flap, being in the same place and performing the same function, though made in a continuous piece from the arm seam, is a full equivalent of this element; and the extension of the second flap from the arm seam without stitching does not constitute an omission by the defendants of one of the elements of the patent claim whereby they avoid infringement.

We find that the patent is valid and infringed, and direct that a decree be entered in accordance with this opinion.