## LOW et al. v. McMASTER.

(Circuit Court of Appeals, Third Circuit. July 1, 1920. Rehearing Denied August 18, 1920.)

No. 2540.

1. Patents ⬡⟿328—1,168,820, for portable tire vulcanizer, valid and infringed.

The Miles patent, No. 1,168,820, for a portable tire vulcanizing apparatus the essential feature of which is the substitution of a solid for the liquid fuel of the prior art, with the result of making vulcanization, not only much cheaper, but more efficient, and so simple that the operation may be performed by persons wholly unskilled, *held* to disclose patentable invention and also infringed.

2. Patents ⬡⟿328—1,163,629, for portable tire vulcanizer, valid and infringed.

The Low patent, No. 1,163,629, for a portable vulcanizing package peculiarly adapted for use with the apparatus of the Miles patent No. 1,168,820, *held* valid and infringed.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by Arthur B. Low and others, partners as the C. A. Shaler Company, and others, against Harry McMaster, doing business as the Presto Patch Company. Decree for defendant, and complainants appeal. Reversed.

See, also, 255 Fed. 235.

Amasa C. Paul, of Minneapolis, Minn., and H. S. Johnson, of St. Paul, Minn. (L. C. Wheeler, of Milwaukee, Wis., and C. H. Howson, of Philadelphia, Pa., of counsel), for appellants.

Hector T. Fenton, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and ORR, District Judge.

WOOLLEY, Circuit Judge. By sundry assignments and contracts of license, the C. A. Shaler Company, a copartnership, acquired the exclusive right to make, use and sell the invention of Letters Patent No. 1,168,820 for vulcanizing apparatus for repairing rubber tires, issued January 18, 1916, to W. H. Miles, and a similar right as to the invention of Letters Patent No. 1,163,629 for a portable vulcanizing package, issued December 7, 1915, to A. B. Low. Charging infringement of both patents by Harry McMaster, doing business as Presto Patch Company, the licensee—joining the owners of the patents—brought this action. The District Court held both patents invalid for want of patentable invention and dismissed the bill. The plaintiffs took this appeal.

The Miles patent—the first applied for and the last granted—relates to a compact and portable apparatus for mending punctures in bicycle, motorcycle and automobile tires by vulcanization, and comprises in combination a clamping device with two jaws, a metal plate attached to each jaw with means for compressing the plates against an interposed tire and its patch, and a block of slow-burning heat

producing material brought into direct contact with the plate bearing upon the part of the tire to be vulcanized.

The Low patent—the last applied for and the first granted—is peculiarly if not particularly adapted for use in the apparatus of the Miles patent, and provides, in lieu of the fuel carrying and heat transmitting plate depending from the upper jaw of the Miles device, a removable and portable metal pan designed to hold an uncured rubber patch on its underside and a solid slow-burning self-oxygenating heat producing substance within its bowl.

The difference between the two inventions is that Miles' is a vulcanizing apparatus in combination with fuel of a given type, while Low supplies that fuel in a new and useful way. Both inventions appear in the plaintiff's commercial product.

[1] The prior art is not extensive. Although tire punctures—the bane of automobilists—have been coextensive with the use of rubber tires on motor vehicles, creating a great and increasing demand for means easily and quickly to mend them, the art had produced very little of practical use in the hands of inexpert operators. It contained apparatus in abundance for use in the garage, but little for use on the road. All these apparatus comprised arrangements to compress the tire and patch undergoing vulcanization. They contained also a pan or pot, the bottom of which was used as the heat transmitting or vulcanizing plate. Much of this mechanism we find in one way or another in the metal parts of Miles' apparatus; therefore, in them we find nothing inventive. But the Miles apparatus is a combination of a metal clamping structure with a heat producing substance having certain characteristics. So also were the portable apparatus of the prior art; but the characteristics of the heat producing materials used in the earlier apparatus were such as to make the presence of a pan or other receptacle necessary, because they consisted entirely of liquid fuel, such as oil, gasoline, or methylated spirits. The heat-producing material of the patent is a solid and therefore does not require a pan to hold it. It rests upon the vulcanizing plate and is held there by a pin. If there is invention in the combination of the Miles patent, it is found not in any novel arrangement of elements, but in the substitution of a new fuel as an element of a combination otherwise old. That was the beginning and the end of Miles' achievement. As we regard this to be his sole contribution to the art, we think the one question of the validity of his patent is, in a word, whether the substitution of this fuel for others involves invention.

On this subject it is the law, that merely to substitute superior for inferior materials, in making one or more or all of the parts of a machine or manufacture, is not invention, although the substitution may be of materials that are both new and useful in high degree. It is also the law, as exceptions to this general rule, that if the substitution involved a new mode of construction; or if it developed new properties and uses of the article made; or where it produces a new mode of operation, or results in a new function; or when it is the first practical success in the art in which the substitution is made; or

where the practice shows its superiority to consist not only in greater cheapness and greater utility, but also in more efficient action, it may amount to invention. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 496, 23 L. Ed. 952; Celluloid Mfg. Co. v. Crane Chemical Co. (C. C.) 36 Fed. 110; Potts v. Craeger, 155 U. S. 597, 608, 15 Sup. Ct. 194, 39 L. Ed. 275; Walker on Patents, §§ 28, 29, 36.

These are the principles to be applied here. What do the cases say about them?

We recognize, of course, that the law consists of principles, not of cases. Yet cases are veritable applications of the law, from which we may extract its principles and to which we may turn for explanation and illustration. Rex v. Bambridge, 3 Douglas, 332. Of the many cases dealing with the principles of the law of substitution, we are attracted—because of their seeming resemblance in fact and their actual contrast in principle—to the companion cases of Union Hardware Co. v. Selchow (C. C.) 112 Fed. 1006, and George Frost Co. v. Cohn (C. C.) 112 Fed. 1009, affirmed (C. C. A. 2d) 119 Fed. 505, 56 C. C. A. 185, as showing, nowhere better perhaps, just when and why the general rule and its exceptions should be applied.

In Union Hardware Co. v. Selchow the claimed invention of the patent consisted in the substitution of sheet metal for cast metal as material for roller skate trucks. In one sense a new result was attained. This new result was reflected in the advantages of the new metal over the old. It made the truck lighter, cheaper and stronger. But that was all. No new function or other result was found in the change of material. The skate continued to operate in all its parts precisely as it did when the truck was made of cast metal. Conceding that these advantages amounted to a step forward in the art, the court, following Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683, and Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852, found that they were due not to inventive skill but to such good judgment in selecting metal as might be expected from one skilled in the art.

In George Frost Co. v. Cohn, the same court was at the same time confronted with another case involving the question of the validity of a patent in which the patentee's sole contribution to the art was the substitution of one material for another, namely, of a button made of rubber for a button made of metal previously used on a hose supporter or garter of the type (so far as we can tell) now commonly worn by men and generall known as the "Boston garter." As in Union Hardware Co. v. Selchow, that was all the patentee did. Having there held against invention on authority of Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852, the learned trial judge, still following that case, quoted Mr. Justice Bradley's statement of the rule:

"The use of one material instead of another in constructing a new machine is, in most cases, so obviously a matter of mere mechanical judgment, and not of invention, that it cannot be called an invention, unless some new and useful result, an increase of efficiency, or a decided saving in the operation, is clearly attained."

Applying the exceptions to the rule to the case then before him, the learned trial judge found that rubber when substituted for metal

as a button material clearly combined the three alternative essentials there stated, in that it gave to the garter a new and useful result, an increase of efficiency and a saving in operation; distinguishing the case from Union Hardware Co. v. Selchow, then just decided, where, though other qualities were present, these were absent. The rubber button performed the same function as the metal button of the art. It buttoned hosiery. But it did something more. It buttoned hosiery without tearing it and without permitting it to slip and run. To do this one thing inventors and mechanics had striven for years and had failed. The patentee did it by the mere substitution of a material that was present in innumerable arts, yet of its use in this art no one had thought. When done, it was of such utility, that, on demand by the public, it wholly displaced the metal button and came into universal use. The court found that in this substitution invention was involved.

The Supreme Court in Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 496, 23 L. Ed. 952, also following Hicks v. Kelsey, 18 Wall. 670, 21 L. Ed. 852, held, that where there is some such new and useful result, where a machine has acquired new functions and useful qualities, it may be patentable as an invention, though the only change made in the machine has been supplanting one of its materials by another; citing the familiar case of Crane v. Price, 1 Webs. Pat. Cas. 393, sustaining a patent, where the whole invention consisted in the substitution of anthracite for bituminous coal in combination with the hot-air blast for smelting iron ore. The doctrine there asserted was, that if the result of the substitution was a new and better or cheaper article, the introduction of the substituted material into an old process was patentable as invention. Applying these general principles to a case which involved no more than the substitution of an elastic for a non-elastic crotch piece in an union suit of underwear, this court found invention, Globe Knitting Works v. Segal, 248 Fed. 495, 160 C. C. A. 505; not because the substituted material was merely better, but because it produced new and useful results evidenced by the increased comfort afforded and the popular demand created.

Let us apply these principles to the apparatus of the Miles patent and see if it involves invention. This will necessitate a short excursion into the prior art. We shall restrict our inquiry to the art of tire vulcanizers and particularly to the art of portable tire vulcanizers. We are not concerned with combustible fuel or its use in a foot-warmer, as in the patent to Stoker, No. 54,477, nor with a charcoal stove vulcanizer, as in the patent to Walter, No. 1,104,722; nor with an electric vulcanizer, as in the patent to Welch, No. 923,224; nor with a hot metallic block vulcanizer, as in British Patent No. 25,502 of 1906 to Hadfield. The Stoker invention was for a heat producing material,—similar, it may be, to the one used by Miles,—and for certain of its uses. The patentees here claim no invention as to material but admit using a material well known in many arts. The other patents just cited have to do, not with portable tire vulcanizers, to be used chiefly in emergencies at the roadside, but with vulcanizers employing heat producing media obtainable only from such stationary sources as may be found in garages. We are concerned with *portable* tire vulcanizers;

and so far as we have been shown, the only heat producing materials used in such vulcanizers before Miles were liquid fuel. These references are: Adamson patent, No. 1,057,911; McGraw, No. 1,039,308; Nelson, No. 1,200,009; Magri, No. 1,157,793; and Marshal, No. 1,058,-306.

In distinguishing this prior art from the invention of the patent, the art may be described collectively, for in the apparatus of each patent there was—because the fuel was liquid—a fire pan or fire pot; and again, because of the characteristic of such liquid fuel to burn only on the surface, there was in each fire pan or pot means for carrying the heat from the burning surface down through the liquid to the bottom plate of the pan or pot for transmission to the tire to be vulcanized. This means variously consisted of upright posts, fins, flanges, wings, radiator pins, and other arrangements for carrying the heat from the flame of the fuel to the bottom of the pan where it was wanted. By substituting solid fuel for liquid, Miles did away with the pan or pot and its heat transferring means, and put his solid fuel in direct contact with the plate to be heated and through which the heat is to be transmitted to the tire. He resorted to a fuel commonly used in Vesuvian matches. Though unknown in this art, it was well known in many, having the characteristics of being self-oxygenating, of smouldering instead of burning with a flame, of burning at once throughout its entire mass, and of burning in any atmosphere without being affected by wind or weather. It can not be blown out. Nothing short of a drenching rain can put it out. Being a fuel, its function, like that of gasoline, was to produce heat; and it produced it in the same way, that is, by ignition; just as the function of the rubber button was to button, and it buttoned in the same way that the metal button did; but like the rubber button, the solid fuel which Miles substituted for the liquid fuel of the art performed not only its normal function but it did something else. It did more than produce heat; it produced it in a way and at a place that brought new results and made new things possible. The Miles' substituted fuel brought heat for the first time in direct contact with the vulcanizing plate of a portable vulcanizing apparatus—a new mode of heat application—and thereby dispensed with the mechanical means of posts, flanges and fins to carry heat from gasoline flame to the place at which it is used. Being solid and composed of known chemicals in variable proportions, Miles' substituted fuel was capable of being made to produce heat of precisely predetermined intensity and duration, thus insuring correct vulcanization in the hands of the inexpert. It substituted exact heat creating means and heat producing results for the skill and judgment indispensable in vulcanization by fluid fuel. It not only made vulcanization simpler and decidedly cheaper, but made it more efficient, and thereby enlarged the field from skilled men in shops and semiskilled men in garages to all users of automobiles however unskilled; and extended the area of this field from shops and garages to all out-doors. It put into the hands of the wholly inexpert a simple little apparatus which has only to be seen to be understood. It is so simple that a child of thirteen can install a patch on a punctured tube as perfectly as an adult. Upon

actual experiment by one conspicuously unskilled in such matters, it has been demonstrated that it takes less than a minute to place a tube between the plates of the Miles apparatus, install the Low package, turn the clamp and ignite the fuel. Thereafter there is nothing to do except to wait five minutes for the fuel to burn out and the pan to cool, when the trick is done. Vulcanization by other portable devices consumed nearly half an hour, and then could be done on the roadside only when means was at hand to extract gasoline from the tank and only when wind and weather permitted. That this use of the substituted fuel was novel is evidenced by the change from the old to the new, admittedly made by Miles. That it is useful is evidenced by its acceptance by the art and the place it has achieved. Railroad Supply Co. v. Hart Steel Co., 222 Fed. (C. C. A. 7th) 271, 274, 138 C. C. A. 23; Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 434, 435, 31 Sup. Ct. 444, 55 L. Ed. 527. The measure of its acceptance and of its actual advance is demonstrated by the fact that the plaintiff company has sold more than 600,000 of its commercial apparatus based on the Miles invention, together with more than 20,000,000 of the Low patch-and-heat packages, thereby displacing nearly all other kindred apparatus on the market.

We regard these facts as pregnant evidence of the novelty, value and usefulness of these devices. If they are close to the line dividing the field of invention from the field of mechanical skill, as first marked in Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683 and surveyed again and again in the cases we have cited, their novelty and usefulness incline our judgment to a finding of invention, remembering that when the question is close, as it usually is when the thing done is simple, the thing achieved, its recognition by the art, and the demand for it by those who use it, are matters properly to be put in the scale and weighed in favor of invention. Schmertz Wire Glass Co. v. Western Glass Co. (C. C.) 178 Fed. 977, 988; Krementz v. Cottle Co., 148 U. S. 556, 560, 13 Sup. Ct. 719, 37 L. Ed. 558.

We are aware, of course, that mere summation of points of merit does not constitute invention any more than mere aggregation of elements; yet the presence of these qualities in a markedly increased measure can not be overlooked in estimating utility of a device and in determining whether it acts in a new way, does new things and produces new and useful results within the principles upon which patents are granted. Globe Knitting Works v. Segal, 248 Fed. (C. C. A. 3d) 495, 498, 160 C. C. A. 505; Neill v. Kinney, 239 Fed. (C. C. A. 3d) 309, 314, 152 C. C. A. 297; Railroad Supply Co. v. Hart Steel Co., 222 Fed. (C. C. A. 7th) 271, 274, 138 C. C. A. 23; Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 434, 435, 31 Sup. Ct. 444, 55 L. Ed. 527; Thropp & Sons Co. v. De Laski & Thropp Circular Woven Tire Co., 226 Fed. (C. C. A. 3d) 941, 947, 141 C. C. A. 545.

The learned trial judge found that Miles "undoubtedly produced, and was the first to produce, as a concrete tangible thing, a device by the use of which patches could be put on automobile tires handily, quickly and with good job results," and that "he has made a highly useful thing, and there is great practical merit in his claim to be left in

the undisturbed possession of the sole right to deal in what, in a very emphatic practical sense, he has created." But the judge found, in line with Union Hardware Co. v. Selchow, that the patentee had done nothing more, and had, in consequence, not made an invention. It may be that this case presents an instance where, invention defying definition, the difference between a patentable improvement and one that is produced by the skill of the calling rests upon a difference of attitude between the minds of those whose task it is to decide it. Seward Trunk & Bag Co. v. Osterweil, 252 Fed. (C. C. A. 3d) 138, 164 C. C. A. 248. However that may be, we are constrained to differ with the learned trial judge in holding against patentability; for we feel, that while Miles' invention was not a great one, it was, nevertheless, a real one.

[2] The device of the Low patent, if an invention, is even less of one than Miles'. Yet, limited to the use for which it is intended, being peculiarly, if not entirely, adapted for use in the Miles apparatus, adding to it convenience in carriage and speed in operation, we think it contains in small measure the quality of invention and is entitled to a patent within its scope.

We are of opinion that the claims of the patents in suit (1 and 4 of Miles and 1, 5, 8 and 16 of Low) are valid.

The issues of infringement may be disposed of in a few words. The defendant has taken bodily the plaintiff's commercial device, in which are found the inventions of the two patents, and denies infringement on the ground of their invalidity; or, should the Miles patent be found valid, then on an interpretation of its claims sufficiently narrow to confer upon him the privilege of walking away with the invention. We find infringement.

We therefore direct that the decree below be reversed, that the bill be reinstated, and the action proceed in harmony with this opinion.