## FOWLER et al. v. HONORBILT PRODUCTS, Inc.
### No. 33.

District Court, E. D. Pennsylvania.

Sept. 3, 1941.

John Dashiell Myers, of Philadelphia, Pa. (Chester C. Baxter, of Philadelphia, Pa., of counsel); for plaintiffs.

Howson & Howson, of Philadelphia, Pa. (Kennard N. Ware, of Philadelphia, Pa., of counsel), for defendant.

KIRKPATRICK, District Judge.

This is a suit for the infringement of Patent No. 1,565,267, issued December 15, 1925, to Fowler, for an upholstery pad. The only defense is invalidity for want of invention.

The patent has a single claim, which is as follows: "A pad for upholstery made up of a fabric backing overlaid by a multiplicity of thin veils of dry carded, long and wavy sisal fibre, said veils being successively superposed upon each other with the fibres of successive layers crossing each other at an angle so as to form a springy unfelted pad and said pad being stitched to the backing."

Pads of this kind are used to overlie the helical springs of inner spring mattresses and upholstery. Before the patent in suit there were in use upholstery pads consisting of bats stitched to reinforcing sheets. Bats had been made of cotton, jute and other soft fibres, and hair and sponge rubber had also been used in the pads, but never sisal. Cotton bats were the commonest and were in general use. The difficulty with cotton, as with all the soft fibre pads, is expressed as well in the patent specification as anywhere: "As heretofore constructed, such pads have been made up of a felted mass of fibre, cotton and curled hair being very commonly used and they have lacked in resiliency and also in use tend to sink into the spaces in and between

the springs and to become lumpy and uneven." Clark, executive engineer of the Chrysler Corporation, a witness, supplemented this statement: "The difficulty with the cotton was the excessively short fibre which you had * * * in the jostling, and in the movement that you got on a road—broke these fibres up continually. The cotton was broken, and then it would ball up and become uncomfortable in the cushion. That was the thing that was wrong with that. * * * Cotton will pack * * * that is the thing we tried to get away from." Of course, nothing gives a used car a more dilapidated air than broken down upholstery with the outlines of the springs showing.

The sisal pad solved this difficulty. Sponge rubber also obviated it, but it is expensive and sisal is cheap. The sisal pad is now used in 35% to 40% of all automobiles manufactured in this country, which, in view of Mr. Clark's testimony that "everybody in the business tried to bring in something to get around this patent," is pretty good.

The characteristics of sisal were, of course, matters of common knowledge, and loose sisal had been tried by upholsterers in an effort to make better pads. These were of little or no use, because, in order to get the particular structure required to resist the spring thrust it was necessary to have a pad of superposed veils with the fibres laid lengthwise, the veils crossing and recrossing diagonally.

This type of veil had already been disclosed and had been used in making pads of cotton. Why were not the method and the sisal fibre combined prior to Fowler's patent? Fowler testified, "I think there was a circumstance there of the people in the soft fibre business knew nothing about hard fibre, and those in the hard fibre business knew nothing about the soft fibre. And I was fortunate enough to have been closely or intimately connected with both soft fibres and hard fibres." He developed his pad by taking the hard-fibred sisal, making the necessary adjustments upon the machinery which had been used for carding and lapping soft-fibred cotton, and carding and lapping the sisal by means of it. No one, prior to his time, imagined that sisal could be treated in this manner. Apparently, no one knew that sisal was cardable. Inquiring of an imaginary person possessed of all the knowledge which the art had prior to Fowler, one might be told, "Sisal would be a good material to use, but the pad has to be made in a certain way for spring upholstery, and you cannot make it of sisal because sisal cannot be carded and lapped." Fowler did not accept this view, but after some experimentation found that sisal could be used.

It may not have been a matter of great difficulty to adapt the machinery then in existence, but the idea that it could be done, reduced to practice, was, in my opinion, invention. As the Circuit Court of Appeals said in Gilbert Spruance Co. v. Ellis-Foster Co., 3 Cir., 114 F.2d 771, 773, "He [the inventor] seized upon a thing which was available to all but had been grasped by none."

It cannot be seriously disputed that the patent made a real improvement, particularly in the heavy duty upholstery used in automobiles, eliminating one important cause of deterioration and extending the useful life of all kinds of inner spring upholstery and mattresses, and that it has had a very substantial measure of commercial success.

Simple as the improvement over the prior art is, I think, that it was a step definitely beyond what could be expected of the worker reasonably skilled in the art.

The question remains whether the patent runs foul of either of two rules of the patent law, frequently asserted against validity, the rule with respect to substitution of materials, and the rule with respect to old or exhausted combinations.

My conclusion is that neither of these rules can be applied to avoid this patent, otherwise valid.

As to the first rule. There is more involved here than mere substitution of materials. There is also a change in construction and mechanical operation. While it is convenient to think of the pad as an integral thing, it is actually made up of a number of separate fibres. The fibres of which a pad of sisal is composed are long enough to bridge the circular open tops of the springs and by so doing resist the tendency of the pad to slip down in and between the springs. The cotton fibres are too short, and the cotton "has got to support the edge, or whatever it is, by a sort of felted adhesive force." Furthermore the sisal fibres are hard and slippery, while the cotton fibres are soft and more or less adhesive. Pressure on the upholstery causes the sisal fibres to slide over one another, making it always resilient, whereas the cot-

ton simply packs and soon loses its resiliency. Thus, the broad statement that this is a case of substitution of new material, even if verbally correct, does not tell the whole story. There really is an entirely different physical construction involved which is quite apparent to anyone who cares to pick apart a sisal and a cotton pad, and a different mechanical interaction of separate elements within the pad itself.

Even if this were a true case of substitution of materials I do not think the rule would void the patent. Any careful statement of the rule is always accompanied by the exception that has been stated in Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 496, 23 L.Ed. 952: " * * * where there is some new and useful result, where a machine has acquired new functions and useful properties, it may be patentable as an invention, though the only change made in the machine has been supplanting one of its materials by another." In a Third Circuit case, Werk v. Parker, 231 F. 121, the change was from camel's hair to horse hair mats for use in the process of extracting oil from cottonseed. The Court pointed out that the felting capacity of camel's hair was an essential difference, and the patent was sustained. See, also, the following cases, all from the Third Circuit: Low v. McMaster, 266 F. 518; Hogan v. Westmoreland Specialty Co., 163 F. 289; Western Tube Co. v. Rainear, 156 F. 49, affirmed 159 F. 431; Globe Knitting Works v. Segal, 248 F. 495; Yablick v. Protecto Safety Appliance Corp., 21 F.2d 885; Allen Filter Co. v. Star Metal Mfg. Co., 40 F.2d 252.

As to the rule against old combinations. As stated by the Supreme Court in Lincoln Engineering Co. v. Stewart-Warner Corporation, 303 U.S. 545, 58 S.Ct. 662, 664, 82 L.Ed. 1008, it is: "And the improvement of one part of an old combination gives no right to claim that improvement in combination with other old parts which perform no new function in the combination."

Even accepting this rule as thus broadly stated, divorced from the facts of the decision, I do not think that the patent presently under consideration is within its spirit or meaning. As has been observed, it is only by way of convenience that the sisal pad may be considered as a single element of a combination of pad and backing. The real assemblage of elements is the countless number of separate fibres, together with the cover which keeps them in place, and the backing. This is not an old combination at all. Viewing the whole, it presents a new mechanical structure different in functional performance from any combination of the prior art.

It is simply another way of putting it to say that the sisal fibres perform a "new or different use or function" in the combination. See the statement of the rule by the Circuit Court of Appeals in Thomas & Betts Co. v. Steel City Electric Co., 3 Cir., 122 F.2d 304, filed June 30, 1941.

When we talk about elements of a combination co-operating or co-operating in a new manner, we miss the mark widely if we do not get beyond the idea of some bit of the mechanism making another bit move about, or holding it in place, or the like. The luminous statement of Judge Hand in Sachs v. Hartford Electric Supply Co., 2 Cir., 47 F.2d 743, 748, is worth quoting here: "The notion that the parts of an invention must co-operate is certainly very persisting in the patent law, and it must correspond to some underlying idea. So far as it means that the whole complex claimed must be a unit in use, each part of which shall be necessary to the common result, we can understand it. So far as it rests upon an implied reference to mechanics, that is, that each part must give or take a strain, it seems to us a false lead. The test is more practical than that, because inventions are to answer human needs, and the elements may be mechanically inert. The co-operation of the means necessary to create an invention is to be measured by the purpose to be fulfilled, not by the interaction of the parts. Each factor must indeed be a condition to that result, but the whole may be a mere assemblage; the co-operation between them all may be no more than their necessary presence in a unit which shall answer a single purpose."

It may be noted that in the Betts case, supra, there was not the slightest suggestion that the improved element co-operated in any new way in the combination, under any conception of what co-operation means.

The plaintiff argues that the rule was not intended by the Supreme Court to be as broad as the defendant, and many of the profession, understand it to be. As stated by the Supreme Court it is referable to a group of three cases, in all three of which it dealt with much the same subject matter. These are known as the Alemite cas-

es. Bassick Manufacturing Co. v. R. M. Hollingshead Co., (Rogers et al. v. Alemite Corporation), 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251; and Lincoln Engineering Co. v. Stewart-Warner Corporation, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, supra. The Court, in the Rogers case, expressly upheld the validity of two claims of the Gullborg patent, which claims, if the rule is given the broad meaning which some of the profession think it requires, would have been invalidated. It does seem unlikely that if the Supreme Court, in the Lincoln Engineering case which came later, meant that a claim must under all circumstances be invalidated because the advance over the art is limited to the improvement, albeit an inventive improvement, of one element of an old combination, it would have allowed that part of its ruling in the Rogers case to stand without comment.

When the Alemite cases were before it, the Court was much concerned with the problem presented by attempts to extend the patent monopoly by suits against manufacturers of unpatented articles for contributory infringement. See Carbice Corporation v. American Patents Development Corporation, 283 U.S. 27, 51 S.Ct. 334, 75 L.Ed. 819. The combination in the Alemite patents was one which peculiarly lent itself to such an effort. The suggestion has been made[1] that a proper interpretation of the Alemite cases would limit the rule to situations in which the patentee of an old combination is attempting, by the introduction of an improved element, unlawfully to extend the monopoly of the patent over an unreasonably wide range of possible contributory infringers. It is true that, unless one has in mind contributory infringement, it is hard to see how it can be said that by claiming an element in combination rather than alone, the patentee broadens the scope of his claim. Ordinarily one would say that if an inventor refrains from claiming a novel element by itself he dedicates it to the public except when used in the particular combination claimed, and so narrows rather than broadens his monopoly.

It is also undoubtedly true that the rule, if applied as broadly as the defendant contends it should be, will invalidate hundreds of patents as to which there has heretofore been little doubt of their merits and contribution to the art.

However, it is not for this Court to say whether or not the rule needs re-examination and restatement, nor do the facts of the present case require that the attempt be made, because the combination here is essentially a new combination and the new element performs a new function and cooperates with the other elements to produce a new result.

### Findings of Fact.

The statements of fact contained in the foregoing opinion may be taken as special findings. If separate findings are desired (although I think it unnecessary), the parties may present requests in the form of numbered paragraphs embodying the facts as so found.

In addition I find that the defendant has infringed the patent.

### Conclusions of Law.

1. Fowler Patent No. 1,565,267 is valid.
2. The plaintiff is entitled to judgment against the defendant, with costs.

---

[1] This is the suggestion of a well considered article which recently appeared in the Journal of the Patent Office Society, Volume XXIII, Number 5.