## SQUIER v. AMERICAN TELEPHONE & TELEGRAPH CO.

(Circuit Court of Appeals, Second Circuit. May 18, 1925.)

No. 309.

**Patents ⊙⇒82—Army officer, procuring patent under statute, held not in position to deny dedication thereof to public.**

Where army officer, obtaining patent under Act March 3, 1883 (Comp. St. § 9441), on device perfected while using public money, swore in his application that any person in the United States might use such invention without paying anything therefor, approved statements of his superior officer to the same effect, communicated similar declarations to press, and addressed a technical association in words meaning same thing, he could not thereafter deny public's right to use, on theory that, had he been better informed as to his rights, dedication to public would not have been made.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by George Owen Squier against the American Telephone & Telegraph Company. Decree for defendant, and plaintiff appeals. Affirmed.

Suit for infringement of claims 2, 3, and 7 of patent 980,356, for "multiplex telephony and telegraphy," the object of which is "the simultaneous transmission of a plurality of telephonic and telegraphic messages over a single telephonic circuit." It may be assumed, though there was no finding below and will be none here, that the specification discloses patentable invention; the litigation will be disposed of on the circum-

stances surrounding issuance of the patent in suit.

Plaintiff is an "officer of the government"; i. e., an officer of the "regular army" or "permanent establishment," having graduated from the Academy at West Point, and served continuously through numerous grades until he passed to the retired list as a major general in the Signal Corps. In 1909–11 he was a major in that Corps and was by the then Chief Signal Officer (Gen. Allen) assigned to use an appropriation of $30,-000 granted by Congress in March, 1909, for research in wireless telephony. Maj. Squier produced, as the result of his labors and the expenditure of the aforesaid public money, this and other patents, which were granted specifically under the Act of March 3, 1883 (22 Stat. 625 [Comp. St. § 9441]), which statute authorizes the grant of patents to any "officer of the government," except employees of the Patent Office, "without the payment of any fee," when the patented invention is "to be used in the public service," provided that the applicant "shall state" in "his application" that his invention "may be used by the government, * * * or by any other person in the United States, without the payment to him of any royalty thereon, which stipulation shall be included in the patent."

Plaintiff complied with the letter of this statute; his application was made an official War Department affair, and at the request of the latter the Interior Department put an examiner in charge of Maj. Squier's application, which was signed November 3, 1910, filed two days later, allowed December 6, and patent issued January 3, 1911, a celerity so unheard of as of itself to indicate a total absence of the usual critical and carping citation of possible prior art. This patent was "run through" the office so quickly doubtless because the Judge Advocate General of the Army had officially construed the act of 1883 as intending "to throw it (i. e., any patent obtained under the statute) open to public and private use in the United States."

Maj. Squier's patents having thus hurriedly issued, labeled "dedicated to the public," no one seems to have doubted that any one could use their subject-matter until, on November 30, 1918, at the request of the "Army and Navy Patent Board," an acting Judge Advocate General, without referring to his predecessor's opinion of 1910, said that he thought the phrase of the statute, "any other person in the United States," meant "any other person in the prosecution of work for the government," and the same meaning was given by an acting Attorney General at the request of the same Patent Board on March 22, 1920, 32 Op. Attys. Gen. 145. Thus encouraged, plaintiff began this suit in 1922. The facts recited and others to be hereafter alluded to having been shown, his bill was dismissed, whereupon plaintiff appealed.

William H. Davis, R. Randolph Hicks, and Samuel E. Darby, Jr., all of New York City, for appellant.

Charles Neave, William R. Ballard, and C. C. Rose, all of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). As above noted, we express no opinion as to defendant's well-urged proposition that plaintiff's patent is no more than a restatement of what other and earlier inventors long ago told the world, nor, in respect of the differing and irreconcilable opinions of Judge Advocates of different years, need we go further than to say that, while we should, if it were necessary, prefer the earlier opinion as better reasoned on the wording of the statute, we think this case was rightly decided below, even if the later views of statutory meaning are correct.

Plaintiff's position is that he swore in his application that "any person in the United States" might use his asserted invention without paying anything therefor because in brief he thought he was compelled so to do. He acted under a mistake of law, the yoke of which error was not lifted from his neck until 1918–20, when light broke on the Department of Justice, in the manner and to the extent above noted. We have assumed for argument's sake that there was a mistake of law made by the Judge Advocate General of 1910 when he construed the act of 1883, but it does not at all follow that this plaintiff acted on or was guided by the same mistake in openly and spontaneously dedicating his work to the public, as he plainly did. In brief, if we assume, though not find, the law to be as plaintiff asserts, plaintiff's own acts and words still prevent his recovery.

It is first observable that nothing compelled Maj. Squier to take out a patent of any sort; any patent seeking was volun-

tary. Next, it is undisputed that he could have sought an ordinary patent at his own expense; he had done so before repeatedly, and nothing but his own preference or a sense of duty, wholly uninfluenced by the act of 1883, would or could lead to proceeding under the statute. Further, had he taken out an ordinary patent, his rights thereunder in respect of the United States were clear enough under Salomons v. United States, 137 U. S. 342, 11 S. Ct. 88, 34 L. Ed. 667, and Gill v. United States, 160 U. S. 426, 16 S. Ct. 322, 40 L. Ed. 480, both well-known rulings before 1910.

But there were special reasons why a man trained from youth to government service would in his better moments at all events be more than willing, would indeed ardently desire, to devote what he had discovered to public service, and indignantly decline to make money therefrom. Such an invention as is here asserted was conceivably possible from a genius brain, but for most even first-rate men an investigation of existing plants and trial of existing apparatus was to say the least desirable, and Maj. Squier had those advantages at public expense; again, the whole appropriation was evidently a chance to advertise and aggrandize the Signal Corps, and that both plaintiff and his military superiors intended throughout to exploit this departmental pride is perfectly plain.

Thus, after proclaiming an intent to give the invention to the public in the application itself, the patentee approved published statements by the Chief Signal Officer to the same effect; he personally communicated similar declarations to the daily press, and addressed a technical association in words that can only mean the same thing. Pride in the army and his own corps and a very human liking for the "lime light" all combined to produce in Maj. Squier a desire, quite sincere at the time, to do exactly what the subtitle on his patent indicated and have it "dedicated to the public."

Of course the very existence of this suit shows that the fit of public spirit has passed; but what controls the interpretation of this patent is the intent of the patentee when he received it, not his present opinion that he would have thought differently, about what he *wished* to do, had he been better instructed as to what he *might* have done. We are satisfied that plaintiff wished and was proud to be generous in 1911; that he now regrets that generous emotion is immaterial.

Decree affirmed, with costs.