## SELDEN CO. v. NATIONAL ANILINE & CHEMICAL CO., Inc.

District Court, W. D. New York.
May 22, 1930.

Newell & Spencer, of New York City (H. Dorsey Spencer, of New York City, and Robert A. Norton, of Pittsburgh, Pa., of counsel), and Wilcox & Van Allen, of Buffalo, N. Y., for plaintiff.

Pennie, Davis, Marvin & Edmonds, of New York City (W. Brown Morton and Raymond B. Canfield, both of New York City, of counsel), and Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y., for defendant.

HAZEL, District Judge.

This is an action in equity for infringement of patents Nos. 1,285,117, granted November 19, 1918 (application dated February 17, 1917), jointly to Harry D. Gibbs and Courtney Conover, and reissue patent 15,520 solely to Conover, dated January 9, 1923 (application filed April 30, 1919, original patent dated December 9, 1919), covering in the first patent a process for making phthalic anhydride, phthalic acid, benzoic acid, and naphthaquinones now useful in a variety of industries notably for the manufacture of dyes, medicinal products, plasticizers for nitrocellulose lacquers and artificial resins, and the second patent covering apparatus for carrying out the process and controlling the generating heat and bringing about reactions of gases. These patents were granted without payment of statutory fees by the inventors under the Act of March 3, 1883 (22 Stat. 625), which reads as follows:

"The Secretary of the Interior and the Commissioner of Patents are authorized to grant any officer of the government, except officers and employees of the Patent Office, a patent for any invention of the classes mentioned in section forty eight hundred and eighty six of the Revised Statutes, when such invention is used or to be used in the public service, without the payment of any fee: Provided, That the applicant in his application shall state that the invention described therein, if patented, may be used by the government or any of its officers or employees in the prosecution of work for the government, or by any other person in the United States, without the payment to him of any royalty thereon, which stipulation shall be included in the patent."

The specifications state:

"This application is made under the Act of March, 1883, chap. 143, and the invention herein described and claimed may be used by the Government of the United States or any of its officers or employees in prosecution of work for the Government, or any person in the United States without payment to us of any royalty."

And on the face of the patent for process are printed the words, "Dedicated to the Public"; and on the face of the reissue patent are printed the words, "Filed under the Act of March 3d, 1883."

At the time the inventions were conceived and perfected, both patentees were employed as chemists in the United States Department of Agriculture. Prior to their conceptions, phthalic anhydride was extensively imported from Germany for use in the manufacture of dyes, and, owing to scarcity of supplies from Europe during the World War, Congress, at the request of the Bureau of Chemistry and Dr. Gibbs, authorized an appropriation of more than $50,000 for erecting a "Color Laboratory" for research and experimentations for the benefit of the chemical dye industry at large; the laboratory being under the superintendence of Dr. Gibbs assisted by Conover. On May 31, 1917, after the application for process patent was filed, Conover assigned all his rights in the joint invention for all foreign countries to his copatentee Dr. Gibbs, who, in turn on the same day, assigned all his right, title, and interest of whatever kind or nature as sole owner to the plaintiff, agreeing to execute any and all papers for procuring patents in all foreign countries, and to secure the signature of Conover, if necessary for such purposes; while plaintiff agreed to develop the process and prove its commercial value. On March 27, 1923, Conover executed a confirmatory

agreement to plaintiff, as joint patentee with Gibbs, together with all claims at law or in equity for damages or profits accrued on account of infringement. Prior thereto, and on May 25, 1921, he assigned to plaintiff his original apparatus patent, which afterwards was reissued. On August 30, 1917, at the request of the inventors, the Department of Agriculture granted them permission to apply for foreign patents for the subject-matter of the process patent. The approval so granted made reference to the previous dedication of the inventions to the people of the United States. The administrative regulations of the Department of Agriculture provide that inventions by employees "will be patented in the name of the inventor without expense to him, in such a way as to allow any citizen of the United States to use the patented article or process without payment of royalties." And the government expressly reserved the right in the regulations to make use of any device that may have been discovered during the time of the employment of any patentee in its service.

Plaintiff claims that the patentees were the first to discover the method by which phthalic anhydride could be made by partial oxidation of naphthalene in the vapor phase in the presence of a suitable catalyst. The claims define a suitable catalyst as an oxide of vanadium, and the patent points out the way of determining the required conditions of partial oxidation. The reissue patent specifies and claims instrumentalities for maintaining constant temperature of the boiling liquid by pressure to control the temperature of the catalyst.

Aside from denying invalidity and infringement, the defendant in its answer avers that the involved patents did not reserve to the patentees any interest in their specified inventions; that any person in the United States has the right to use the process and apparatus for his own private purposes without payment of any royalties. The validity of the assignment of the patents to plaintiff is also challenged.

The first question to be decided is the construction of the act under which the patents in question were granted. Were they, under the act of 1883 and the regulations of the Department of Agriculture and the acts of the parties, in fact a dedication to the public? The enactment of 1883 had been given conflicting interpretations by nonjudicial department officers. Its history is somewhat beclouded and the reference in the Senate Committee Report and the consideration given

en the proposed enactment by the Senate does not disclose its intendment or scope other than may fairly be deducible from the language used which plainly denotes its use by the government in prosecution of work for the government or by any person in the United States without payment of any royalties. At the time of filing the applications for patents, and indeed when the assignments to the Selden Company were executed and delivered, all the parties assumed that, since the discoveries were made in the course of research work by the inventors at government expense, the resultant inventions were in fact dedicated to the free use of any person in the United States. This assumption was apparently based on the written interpretation of the act of 1883 of the then Judge Advocate General, dated November 4, 1910, stating in substance that property rights accruing in the United States from the issue of a patent to an employee of the government at the expense of the government are not vested in the patentee under the final clause of the act, and that use of the invention is open to the public and to the United States. In November, 1918, however, General Ansell, Acting Judge Advocate of the Army and Navy Patent Board, adopted a contrary view and ruled that there was no dedication to the public of a patent which issued under the act in question, and that the meaning of the provision was that the government only acquired rights of use in such an invention. He reasoned that if the act of 1883 were subject to a different construction, the patent logically would not be a grant of the exclusive right to make, use, and vend the invention; and that the phrase "or any person in the United States" implied any person engaged in the prosecution of work for the federal government. The Acting Attorney General reached a similar conclusion. The construction of the act for the first time came before the court in Squier v. American Tel. & Tel. Co. (D. C.) 21 F.(2d) 747, affirmed (C. C. A.) 7 F.(2d) 831, 832. Judge Knox decided the case in the District Court adversely to the plaintiff on the ground that he had specifically dedicated his invention to the public without royalty. He interpreted the act of 1883, and reached a conclusion contrary to that of the Judge Advocate and Acting Attorney General. He was of opinion that the earlier interpretation was correct. He based his opinion upon the fact that the long-continued "course of conduct upon the part of persons vitally interested in the administration of the law is not without some persuasive force in an endeavor to

reach a correct conclusion." And Judge Hough, writing the affirming opinion for the Circuit Court of Appeals, said:

"In respect of the differing and irreconcilable opinions of Judge Advocates of different years, need we go further than to say that, while we should, if it were necessary, prefer the earlier opinion as better reasoned on the wording of the statute, we think this case was rightly decided below, even if the later views of statutory meaning are correct."

Plaintiff seeks to evade these judicial pronouncements on the ground that the title to the phthalic anhydride invention had been transferred to plaintiff soon after the application for the patent in suit was filed, and before "either Dr. Gibbs or Conover had made any statement regarding their interest in the invention"; and further that the Act of March 3, 1883, specifically authorized a grant to an employee of the government without payment of fees on condition that the patentee would allow the government to use the invention or have it used for government work. The argument on this point is unpersuasive since the administrative regulations of the agricultural department, which have the force of law, not only reserve to the government the right to make use of any device that may have been invented by a patentee during his employment in the government service, but provide for patenting the invention in such a way as to allow the people of the United States to use the invention without payment of royalties. Plaintiff did not assert any private rights of ownership, until the announced opinions of Judge Advocate General Ansell and the Acting Attorney General that patents issued under the act of 1883 were not dedications to the public. Prior thereto, it is fair to assume, all the parties regarded that the inventions were for the free use of the people. Plaintiff further urges that the administrative regulations did not confer any rights upon the government in the invention, and to so construe it would be unconstitutional. The regulation, however, is not, in my opinion, inconsistent with the act of 1883, as applied to the patents in controversy, and accordingly it has the effect of law. Maryland Casualty Co. v. U. S., 251 U. S. 342, 40 S. Ct. 155, 64 L. Ed. 297. Although the Conover apparatus was not wholly constructed at government expense, the expense of filing the patent application, preparing the drawings and description was concededly at its expense. That the plaintiff company was in privity with the inventors with relation to both patents in suit is suf-

ficiently proven. Dr. Gibbs swore that he showed the president of plaintiff the letter from the Department of Agriculture granting permission to apply for foreign patents, and further that plaintiff was aware that he had published to the trade at large that the patents on their issuance were dedicated to the public.

In the circumstances, both Gibbs and Conover were precluded from claiming any interest in the patents at variance with such free use by the public; and, moreover, the plaintiff company could have no other or different interest than was possessed by the patentees. Ingle v. Landis Tool Co. (D. C.) 262 F. 150. Although the government had no interest in the manufacture of phthalic anhydride, such as it would have, for example, in the patenting of devices by an employee of the Navy or War Department, yet it no doubt had the same rights under the act of 1883 and regulations of the Department of Agriculture to use the inventions, if for any reason it desired to do so. While the patentees undoubtedly had the right to use their creative ideas and patent same under the general statute, retaining a personal interest therein, yet when an invention by an employee is made at the expense of the government, his personal interest in his invention belongs to the government. Even though the enactment of 1883 is somewhat involved or ambiguous, its accepted interpretation, by officials whose duty it is to carry the law into effect, is controlling. Schell v. Fauche, 138 U. S. 562, 11 S. Ct. 376, 34 L. Ed. 1040.

The amendatory act of 1928 (35 USCA § 45) did not repeal the earlier act and cannot be given the same interpretation as the later, for it clearly is not retroactive, Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U. S. 190, 34 S. Ct. 101, 58 L. Ed. 179.

Upon the point of ownership by the government and dedication to the public, there is persuasive analogy in Houghton v. U. S. (C. C. A. 4th) 23 F.(2d) 386, 390, 391. In that case the inventor was a chemist in the employ of the government health service, and the action was brought by the United States against the patentee as equitable owner to have the patent assigned to it. The court ruled that, even though the government did not desire a monopoly of the patent, its desire that it should be dedicated to the public could not be thwarted. Plaintiff's argument that Gibbs and Conover were not directed, as in that case, to "experiment with

a view of making an invention" or solve a particular problem, that their conceptions related to a new process and method in which the government merely retained shop rights, has been considered, but I incline to the view, in the light of the evidence in its entirety, that the principle of the Houghton Case is not inapplicable. Nor has the contention merit that defendant should not be allowed to urge the invalidity of the assignments to plaintiff or assert the government's title to the invention. In the case of Yablick v. Protecto, etc., Corp. (C. C. A.) 21 F.(2d) 885, cited in support of plaintiff's contention, the patent had not been dedicated to the public under the act of 1883, and was not issued without the payment of any fee, and accordingly the court decided that the legal title was in plaintiff, which enabled him to maintain the action, leaving it, however, to the government to assert its equitable title as a defense.

■■ It is next contended by defendant that plaintiff is estopped to claim any rights in the patents in opposition to it and its predecessor in interest. The witness Weiss testified that defendant's predecessor expended large amounts in development work and in designing apparatus for practicing the process—all in reliance upon the dedication to the public appearing upon the face of the patents. It is elicited that plaintiff was aware of defendant's operations, and that as early as 1918 there were negotiations between representatives of plaintiff and defendant with relation to such operations. As early as October, 1918, Dr. Gibbs wrote an article published in the "Journal of Industrial and Chemical Chemistry" that the process patent was dedicated to the people by the Department of Agriculture, and before the process patent was issued he had stated that it was dedicated to the free use of the public. It was, no doubt, his intent at such time that the process for the manufacture of phthalic anhydride would be usable by the general public. Indeed, his intent is fairly inferable by his request and the request of Conover for permission to take out foreign patents. Aside from this, his testimony in an interference proceeding, pending in October, 1921, relating to the process, in which plaintiff was a party, shows that prior to the assignment to plaintiff he had informed plaintiff's president that all rights were dedicated to the people, and Dr. Johns; who succeeded Dr. Gibbs as head of the Color Laboratory, testified that the Department of Agriculture advised inquiring parties that they were free to use the process. Such acts

by an inventor are in the nature of an intentional abandonment to the public of any special rights in his invention. Squier v. Am. Tel. & Tel. Co., supra, and cases cited. That the assignments to plaintiff were made before patents were granted is not believed to be of material importance inasmuch as the rights of the government and of the public to practice the process had become vested upon the filing of the applications. No assignable interests were retained by the inventors [Houghton v. U. S. (C. C. A.) 23 F. (2d) 386, 391], aside from rights to foreign patents—rights that eventuated solely because of the permission granted by the Secretary of Agriculture.

My conclusion is that the Selden Company did not obtain legal or equitable title to the patents in suit. Other defenses relating to intervening rights and laches, invalidity, and infringement need not be considered.

The complaint is dismissed, with costs.